## Clarke Estate

*Fink & Jennings* and *C. B. Hollingsworth*, for accountants.

*Willis E. Topper* and *A. Frank Steiner*, for Commonwealth.

COPELAND, P. J., October 25, 1950.—By this appeal, the executors of the estate of James K. Clarke raise only the question of the value of the real estate of decedent. No other questions having been raised by appeal by the Commonwealth or by objections at the audit of the executors' account, only those questions raised by the appeal can be considered by the court: Act of May 27, 1943, P. L. 757, sec. 1 and sec. 3, 72 PS §§2302, 2327.

### Findings of Fact

1. James K. Clarke died testate on December 28, 1945, and his executors, Daniel L. Joyce and Union Trust Company of Pittsburgh, now Mellon National Bank & Trust Company, qualified as such executors on January 7, 1946.

2. On March 19, 1946, the executors filed in the register of wills office a description of the real estate of decedent.

3. Within two or three days of March 19, 1946, Nicholas Roy, chief appraiser in this county for the Department of Revenue, examined the real estate and appraised the first parcel, located on Main St., Greensburg, Pa., at $50,000, and the second parcel, located in Southwest Greensburg, Pa., at $7,500 for decedent's three-fourths interest therein.

4. On the basis of this appraisal the executors paid inheritance tax on or before March 26, 1946, in the amount of $6,000 less five percent for prompt payment.

5. On April 2, 1946, the first parcel was sold for $60,000 and on May 4 and 28, the whole interest in the second parcel was sold for $14,200.

6. The first and final account of the executors was filed September 13, 1948, and was called for audit on November 5, 1948. At that time the audit was continued until November 10, 1948. This account was confirmed nisi and a decree of distribution filed December 21, 1948.

7. No claim was made for additional inheritance tax at the audit of the executors' account and no exceptions to the decree of distribution were filed by the Commonwealth.

8. The confirmation of the account of the executors and the decree of distribution were made absolute on January 24, 1949.

9. The record shows that the balance for distribution to legatees was $70,653.04 and that this whole sum was distributed and receipts therefor filed in the clerk of orphans' court's office on or before May 26, 1949.

10. On July 5, 1949, the Department of Revenue, by its appraiser for Westmoreland County, Nicholas A. Roy, filed its appraisement dated June 3, 1949, in which the valuation of the first parcel of land was changed from $50,000 to $60,000 and of decedent's interest in the second parcel from $7,500 to $10,237.50.

11. The evidence shows by Commonwealth's exhibit I that the Department of Revenue knew, on or about June 1, 1946, about the sales of the property in question.

12. No new appraisement of the property was made by the Department of Revenue at any time after March 25, 1946. The chief appraiser for this county

merely changed his figures on direction from one Edwin W. Schwenk, Sr., inheritance tax investigator, who in turn based his directions upon a report, dated June 10, 1949, by another inheritance tax investigator to the effect that the properties had been sold. This report did not state the correct sale price of the second parcel.

13. The evidence shows, and the court finds as a fact that the fair market value of decedent's real property at the date of his death was $57,750.

## Conclusions of Law

1. The appeal from the appraisement filed July 5, 1949, for inheritance tax of the two parcels of real property described in the appeal should be sustained.

2. The Commonwealth is estopped from making a reappraisement as of July 5, 1949.

3. The inheritance tax due the Commonwealth should be calculated on the basis of a valuation of $57,750 for all decedent's interest in real property.

## Discussion

Decedent in this case died on December 28, 1945, and his executors filed a statement and description of his real estate on March 19, 1946. The real property having been appraised by the chief appraiser of Westmoreland County for the Department of Revenue, the executors paid inheritance tax on that basis on or before March 26, 1946, in order to save the discount for prompt payment.

By the regulations of the Department of Revenue relating to estates over $50,000, this was a tentative appraisal. What was intended as a final appraisal was filed by the chief appraiser on July 5, 1949, which was more than three and one-half years after decedent's death. During this three and one-half year period, all the real estate had been sold, the first and final account of the executors had been filed, and

audited, the account was confirmed and a decree of distribution made, and the distribution, so ordered, had been paid and receipted for on the records of the clerk of courts. No funds remained in the hands of the executors available for payment of additional inheritance tax.

This is not a case of fraud, accident or mistake nor is it a case of an omitted asset such as was McGettigan's Estate, 31 Northamp. 277. The Commonwealth does not contend that any such matters are involved, but merely states that, without any prior notice, it changed the original tentative appraisement on July 5, 1949, and on that date filed its first binding appraisement. This is not even a case of after-discovered evidence of value, for Commonwealth's exhibit I shows that the Department of Revenue had notice, on or about June 1, 1946, of the facts upon which it bases its new appraisement. Under these circumstances the court is of the opinion that the Commonwealth, by reason of its unexcused delay to the prejudice of the taxpayer, is estopped from changing the original tentative appraisement.

However, it is not necessary to decide this case upon that ground. Although the cases have held that an appraisement made by the Department of Revenue is prima facie correct, that presumption disappears where the evidence fixes other values: Keller's Estate, 53 Dauph. 317; Campbell's Estate, 44 Lack. Jur. 245. There was no actual appraisement of decedent's real estate by Nicholas A. Roy, appraiser for the Department of Revenue, which resulted in his valuation of $70,237.50 as filed by him. That valuation was placed on record by him only as a result of a direction to that effect by Edwin W. Schwenk, Sr., of the Department of Revenue, who has never seen the properties involved. Such valuation was apparently against the real judgment of Mr. Roy, for he states on the witness stand

that in his opinion the value at the date of death of decedent's real property was $57,750, which was the figure originally fixed by him.

The Commonwealth did call another expert witness, Lewis B. Croushore, who testified that the value of the realty at decedent's death was in his opinion $70,500. However, his testimony is weakened somewhat by the fact that in a former proceeding in this estate he testified that the Main Street property which he values at $60,000 had a rental value of only $40 per month. He also made the mistake of appraising a three-fourths interest in the other properties at a full three-fourths of the value of the whole interest. It has always been recognized that an undivided fractional interest is less valuable than its proportionate share of the whole title.

The executors had the properties appraised by two independent competent experts in January 1946, or within less than one month after decedent's death. These two real estate brokers were called as witnesses and stated their opinions as to the values at the date of decedent's death, as $54,025 and $59,000. Thus the court has before it, as the most credible testimony, the opinions of three witnesses, one of whom is the appraiser for the Department of Revenue, whose average appraisement of decedent's realty is $56,841.66.

Although decedent's interest in these properties sold for $70,850 in April and May of 1946, this price is not conclusive. The evidence shows that there was a rising market for real estate at that time and there is no evidence what part of the purchase price was the result of an improved market. This case presents the same situation as found in Engelman's Estate, 22 Lehigh 317.

The court is of the opinion that the appraised value of $57,500 as originally made by the chief appraiser of this county for the Department of Revenue is the

fair market value of decedent's realty at the date of his death.

### Decree

And now, October 25, 1950, after hearing, it is ordered, adjudged and decreed that the value of the real property of James K. Clarke, deceased, at the time of his death, was $57,750, and further that the inheritance tax due the Commonwealth of Pennsylvania shall be calculated on that valuation and that the appeal from the appraisement thereof filed July 5, 1949, is sustained to that extent.